UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
CENTER FOR NATIVE ECOSYSTEMS,           )
1536 Wynkoop, Suite 301                 )
Denver, CO 80202,                       )
                                        )
and                                     )
                                        )
FOREST GUARDIANS,                       )
312 Montezuma Ave., Suite A             )
Santa Fe, NM 87501,                     )
                                        )
and                                     )
                                        )
UTAH NATIVE PLANT SOCIETY               )
4848 South Highland Drive #202          )
Salt Lake City UT 84117,                )
                                        )
            Plaintiffs,                 )
                                        )
    v.                                  )
                                        )
GALE NORTON, in her official capacity as)
Secretary of the Interior;              )
1849 C Street, N.W.                     )
Washington, D.C. 20240                  )
                                        )
            Defendant.                  )
_____)
```

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I. INTRODUCTION

1.   Plaintiffs CENTER FOR NATIVE ECOSYSTEMS, FOREST GUARDIANS and

UTAH NATIVE PLANT SOCIETY challenge the failure of Defendant GALE NORTON,

Secretary of the Interior, to designate critical habitat for the *Astragalus desereticus*, which is

commonly know as the Deseret milk-vetch, under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-44, and to develop and implement a recovery plan for the species.

## II. JURISDICTION, VENUE, and NOTICE

2. This is an Endangered Species Act citizen suit or, in the alternative, an action pursuant to the Administrative Procedures Act. Thus, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA and citizen suit provision).

3. This Court has authority to award the relief sought pursuant to 16 U.S.C. § 1540(g), 28 U.S.C. §§ 2201 (declaratory relief) and 2202 (injunctive relief), and 5 U.S.C. §§ 706.

4. A substantial part of the events and alleged omissions giving rise to the claims in this case occurred in the District of Columbia. Furthermore, Defendant Gale Norton resides, in her official capacity, in the District of Columbia. Thus, venue is proper in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(1) and (2).

5. As required by the ESA, 16 U.S.C. § 1540(g), Plaintiffs provided Defendant with written notice of intent to sue regarding the violations alleged in this Complaint via an April 27, 2005 letter. Sixty days have passed since Defendant received Plaintiffs' April 27, 2005 notice of intent to sue letter. Defendant has not acted to remedy the alleged violations in this Complaint. Therefore, a present and actual controversy exists between the parties.

## III. PARTIES

6. Plaintiff CENTER FOR NATIVE ECOSYSTEMS ("CNE") sues on behalf of itself and its adversely affected members and staff. CNE is a Denver, Colorado-based non-profit,

science-based conservation organization dedicated to protecting and recovering native and naturally functioning ecosystems in the Rocky Mountain Region, which includes the area within the range or potential range of the Deseret milk-vetch.

7.    Plaintiff FOREST GUARDIANS sues on behalf of itself and its adversely affected members and staff.  Forest Guardians is a non-profit environmental organization committed to protecting flora, fauna, natural processes, and native habitats in the greater American southwest, including Utah.

8.    Plaintiff UTAH NATIVE PLANT SOCIETY ("UNPS") sues on behalf of itself and its adversely affected members and staff.  UNPS is a non-profit Utah corporation dedicated to the preservation of Utah rare native plants.  UNPS has membership worldwide, including members who reside in Utah County, Utah, home to the threatened Deseret milk-vetch.  For over twenty-five years, UNPS has sponsored committees and educational programs promoting the value of Utah native plants.

9.    Plaintiffs' members and staff have educational, scientific research, moral, spiritual, and recreational interests in the Deseret milk-vetch.  Plaintiffs' members and staff regularly use and will continue to use on a regular basis lands within the habitat and potential habitat of the Deseret milk-vetch, for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities.  Plaintiffs' members and staff have participated in efforts to protect and preserve the Deseret milk-vetch and its habitat.  Defendant's refusal to designate critical habitat for the Deseret milk-vetch has prevented the implementation of protective measures for the Deseret milk-vetch and its habitat.  Defendant's refusal to finalize a recovery plan is interfering with the recovery of the Deseret milk-vetch.  Plaintiffs' interests and the interests of its members and staff have been, are being, and unless the relief requested is granted,

3

will continue to be adversely affected and irreparably injured by the Secretary's refusal to designate critical habitat and failure to finalize a recovery plan for the Deseret milk-vetch. Plaintiffs' injuries would be redressed by the relief sought.

10.   Defendant GALE NORTON is sued in her official capacity as the Secretary of Interior ("Secretary").  The Secretary is the federal official in whom the ESA vests responsibility for designating critical habitat and finalizing and instituting recovery plans for listed species.

## IV.  LEGAL BACKGROUND

11.   The purpose of the ESA is "to provide a program for the conservation of . . . endangered species and threatened species" and "to provide a means whereby the ecosystems upon which [such] species depend may be conserved."  16 U.S.C. § 1531(b).

12.   To this end, the ESA directs the Secretary to determine which species are "threatened" or "endangered" within the meaning of the ESA.  16 U.S.C. § 1533.  A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  A species is "threatened" if it "is likely to become an endangered species within the foreseeable future."  16 U.S.C. § 1532(20).

13.   The Secretary must list a species if it is endangered or threatened because of any one or more of the following factors:

    (A)   the present or threatened destruction, modification or curtailment of its habitat or range;

    (B)   overutilization for commercial, recreational, scientific or educational purposes;

    (C)   disease or predation;

    (D)   the inadequacy of existing regulatory mechanisms; or

    (E)   other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1); 50 C.F.R. § 424.11(c).

14. The Secretary must designate critical habitat for each threatened or endangered species, to the maximum extent prudent and determinable, "concurrently" with listing a species. 16 U.S.C. § 1533(a)(3)(A).

15. Critical habitat is defined in Section 3 of the ESA as:

> (i) the specific areas within the geographical area occupied by a species, at the time it is listed in accordance with the Act, on which are found those physical or biological features (I) essential to the conservation of the species and (II) that may require special management considerations or protection; and (ii) **specific areas outside the geographical area occupied by a species** at the time it was listed, upon a determination that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A)(i)(emphasis added).

16. According to the United States Fish and Wildlife Service's ("FWS") regulations critical habitat designation is "not prudent" only when: (i) The species is threatened by taking or other human activity, and identification of critical habitat can be expected to increase the degree of such threat to the species, or (ii) Such designation of critical habitat would not be beneficial to the species. 50 C.F.R. § 424.12(a)(1).

17. When Congress established the critical habitat designation process, it clearly articulated that the "not prudent" exception was to be used sparingly. "It is only in rare circumstances where the specification of critical habitat concurrently with the listing would not be beneficial to the species." H.R. Rep. No. 1625, 95th Cong., 2d Sess. 17, reprinted in 1978 U.S.C.C.A.N. 9453, 9467.

18. Since a Congressionally imposed moratorium on listing actions expired in April 1996, the Secretary has issued final rules listing over 200 species as threatened or endangered under the ESA. Until recently, in every one of these rules the Secretary declared that designating critical habitat was "not prudent." Several successful legal challenges to "not prudent" findings

have resulted in court orders and court approved settlement agreements requiring the Secretary to withdraw arbitrary and capricious "not prudent" findings and issue new critical habitat determinations for the subject species.  See <u>Sierra Club v. U.S. Fish and Wildlife Service</u>, 245 F.3d 434, 445 (5th Cir. 2001) ("not prudent" finding ruled arbitrary and capricious); <u>Natural Resources Defense Council v. United States Department of the Interior</u>, 113 F.3d 1121, 1127 (9th Cir. 1997) (same); <u>Building Industry Association of Superior California v. Babbitt</u>, 979 F. Supp. 893, 908 (D.D.C. 1997) (same); <u>Butte Environmental Council v. White</u>, 145 F. Supp. 2d 1180, 1184 (E.D. Cal. 2001) ("not prudent" finding ruled not in accordance with law). Following an increase in such injunctions and settlement agreements, the Secretary has once again begun to issue rules for listed species finding that designation is indeed prudent, but continues to fail to actually designate critical habitat concurrently with the species' final listing rules as required by the ESA.

19.     The Secretary also must develop and implement recovery plans for the conservation and survival of listed species.  16 U.S.C. § 1533(f).  Each recovery plan must include:

(1)     a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;

(2)     objective and measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and

(3)     estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

16 U.S.C. § 1533(f)(1)(B).  FWS has a policy of completing recovery plans within two and a half years of listing of a species.

## V.  DESERET MILK-VETCH



Closeup (C. Delmatier)

20. A member of the bean family, the Deseret milk-vetch is a perennial herb with gray or silver leaves two to four inches long and white to pink petals with lilac markings. The Deseret milk-vetch was first collected in 1893. It blooms from late April to early June and can reach up to six inches in height. It grows exclusively in sandy-gravelly soils primarily on steep south and west facing slopes at elevations ranging from 1,645 to 1,740 meters.

21. The sole currently known population of Deseret milk-vetch in the United States consists of between 5,000 and 10,000 individuals that grow within an area of less than 300 acres in Utah County, Utah.

22. Deseret milk-vetch's habitat includes land that is both publicly and privately owned, and consists mainly of a wildlife management area that is also used for cattle grazing. The entire population of the Deseret milk-vetch is located within 1,000 feet of a two-lane rural highway in a rapidly suburbanizing area. The chief threats to the survival of the Deseret milk-vetch are grazing and trampling by livestock, alteration of habitat due to residential development and road widening, and natural events such as fires.

23. Because the plant is highly imperiled, the Secretary listed the Deseret milk-vetch as a threatened species on October 20, 1999. 64 Fed. Reg. 56,590.

24. When the Secretary listed the Deseret milk-vetch as threatened, the Secretary determined it was "not prudent" to designate critical habitat. Id. at 56,594.

25. The Secretary stated the designation of critical habitat would not be beneficial to the species. Id.

26. In finding that designation of critical habitat would not benefit the Deseret milk-vetch, the Secretary ignored the fact that designation of critical habitat provides additional protections that are not available through listing alone. For example, the Secretary ignored the fact that critical habitat can include currently unoccupied range. In addition, the standard for determining jeopardy is different from the standard for determining adverse modification of critical habitat during Section 7 consultations as impairment to critical habitat that is needed for recovery, and not just survival of the species, is adverse modification. See e.g. Gifford Pinchot Task Force v. U.S. Fish and Wildlife Service, 378 F.3d 1059 (9th Cir. 2004). .

27. As to a recovery plan, in the five years that have passed since the Deseret milk-vetch was listed as threatened, the Secretary has not developed or implemented a recovery plan for the species. This failure to develop a recovery plan is despite the fact that the Deseret milk-vetch faces serious threats that would be mitigated or removed through a properly developed and implemented recovery plan.

## VI. CLAIMS

FIRST CLAIM FOR RELIEF
(Endangered Species Act and Administrative Procedure Act —Failure to Designate Critical Habitat for the Deseret milk-vetch)

28. Paragraphs 1-27 of this complaint are incorporated herein by reference.

29. The ESA requires that Defendant designate critical habitat for the Deseret milk-vetch. 16 U.S.C. § 1533(a)(3). Defendant has violated the ESA by failing to designate critical habitat for the Deseret milk-vetch and instead issuing an improper "not prudent" critical habitat determination for the Deseret milk-vetch.

30. Defendant's failure to designate critical habitat for the Deseret milk-vetch violates her non-discretionary duty under the ESA to designate critical habitat concurrently with listing to the maximum extent prudent and determinable. 16 U.S.C. §§ 1533, 1540(g)(1)(C).

31. In finding that it was "not prudent" to designate critical habitat for the Deseret milk-vetch, Defendant failed to consider the benefits of critical habitat designation, and evidence suggesting that habitat loss and destruction poses a serious threat to the survival of the Deseret milk-vetch.

32. Defendant's "not prudent" finding is therefore arbitrary and capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law in violation of the ESA and/or the Administrative Procedures Act ("APA"). 5 U.S.C. § 706.

SECOND CLAIM FOR RELIEF
(Endangered Species Act and Administrative Procedure Act – Failure to Develop and Implement a Recovery Plan for the Deseret milk-vetch)

33. Paragraphs 1-27 of this complaint are incorporated herein by reference.

34. Defendant is required to develop and implement a recovery plan for the conservation and survival of the Deseret milk-vetch. 16 U.S.C. § 1533(f). In failing to take these actions, Defendant has violated her non-discretionary duties under Section 4 of the ESA, within the meaning of the ESA's citizen suit provision. 16 U.S.C. § 1540(g)(1)(C).

35. Defendant's failure to develop and implement a recovery plan for the Deseret milk-vetch constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of the APA. 5 U.S.C. § 706.

## VII.  PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiffs respectfully request that this Court enter judgment providing the following relief:

A.   Declaratory judgment finding that Defendant is in violation the ESA and/or APA by issuing an arbitrary and capricious finding that critical habitat is not prudent for the Deseret milk-vetch and by failing to designate critical habitat for the Deseret milk-vetch;

B.   Injunctive relief requiring Defendant to withdraw the "not prudent" critical habitat determination and to issue a critical habitat decision for the Deseret milk-vetch by a date certain in compliance with the ESA and consistent with this Court's findings;

C.   Declaratory judgment finding that Defendant is in violation of the ESA and/or APA by failing to develop and implement a recovery plan for the Deseret milk-vetch;

D.   Injunctive relief requiring Defendant to develop and implement a recovery plan by a date certain to ensure the conservation and survival of the Deseret milk-vetch;

E.   An order awarding Plaintiffs their costs of litigation, including reasonable attorney fees and;

F.   Such other relief the Court deems just and proper.

Respectfully submitted,

_____
Robert Ukeiley (MD14062)
Law Office of Robert Ukeiley
433 Chestnut Street
Berea, KY 40403
Tel: (859) 986-5402
Fax: (859) 986-1299
E-mail: rukeiley@igc.org

Counsel for Plaintiffs

Dated: June 30, 2005